F. B. Tippins, Jr., and Mary Tippins v. Commissioner.
Tippins v. Commissioner
Docket No. 93596.
United States Tax Court
T.C. Memo 1965-98; 1965 Tax Ct. Memo LEXIS 234; 24 T.C.M. (CCH) 521; T.C.M. (RIA) 65098; April 14, 1965
*234 Petitioner's business was that of a real estate broker. He held a stock interest in a corporation which was engaged in the development of a subdivision and the sale therefrom of subdivided lots and houses and lots. The assets of the corporation were distributed to the stockholders. Petitioner desired to liquidate his investment in the corporation and over a period of 3 years sold lots and houses and lots acquired in the distribution of the corporate assets. Held, in disposing of the real property thus acquired petitioner was not engaged in the conduct of a business and his gains therefrom are to be treated as capital gains. Carl F. Bauersfeld, for the petitioners. Louis J. DeReuil, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent has determined deficiencies in the income tax of petitioners for 1953, 1954, and 1955 in the respective amounts of $35,075.92, $26,567.16, and $199.24 and additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939 for the years 1953 and 1954 in the respective amounts of $2,780.65 and $1,703.95. All but one issue raised by the pleadings have been settled by the parties *235 and such settlement will be given effect under Rule 50. The sole remaining issue is whether petitioner's gains from the sale of subdivided real property in lot form constituted capital gain or ordinary income. Findings of Fact The facts which have been agreed upon by the parties are found as stipulated. F. B. Tippins, Jr. (hereinafter referred to as petitioner), and Mary Tippins are husband and wife who filed their joint Federal income tax returns for the taxable years ended December 31, 1953, 1954, and 1955 with the district director of internal revenue, Jacksonville, Florida. Petitioner has been a real estate broker since 1938; was engaged in business as a real estate broker in the Miami, Florida, area during the taxable years 1953, 1954, and 1955; has an office presently located at 5942 S.W. 73d Street, South Miami, Florida; and is listed in the Miami classified telephone directory as a real estate broker. Petitioner's business is effectuating the sale of properties to people for a commission, such as lots, acreage, commercial and industrial properties. Petitioner had sold houses and properties for Erving A. Moss, a builder, in connection with his business *236 as real estate broker. In the course of petitioner's business as a real estate broker, he located a piece of real property in the south end of Dade County, Florida, and, together with Moss, formed Town and Ranch Estates, Inc. No 1, the place of business which was in Miami, Florida (hereinafter sometimes referred to as the corporation). On January 27, 1950, Town and Ranch Estates, Inc. No. 1 was incorporated under the laws of the State of Florida and was authorized to have outstanding a maximum of 50 shares of stock. At the first meeting of the board of directors and stockholders held on January 30, 1950, the corporate name was changed to "Town and Ranch Estates, Inc.". The actual owners of the 50 shares of stock issued and outstanding, the number of shares held, and percentage of ownership thereof as the formation of the corporation were as follows: No.
Ownership
Name
shares
percentage
Erving A. Moss
25 1/2
51
F. P. Tippins, Jr.
24 1/2
49
During the life of the corporation Moss died, on August 13, 1951, and his stock passed to his estate and was acquired by his widow and his son, as tenants in common, with share ownership in the corporation then *237 reflected as follows: No.
Ownership
Name
shares
percentage
Harriett E. Moss and Har-
old N. Moss
25 1/2
51
F. B. Tippins, Jr.
24 1/2
49 By subsequent purchase petitioner acquired one-half extra share of stock resulting in equal stockholding between petitioner on one hand and Moss's widow and son on the other. The corporation was formed for the purpose of building homes and developing the subdivision property and was empowered either to develop, plat, subdivide, improve, and sell the property and/or to conduct and carry on the business of builders and contractors for the purpose of building residences. In furtherance of its purposes and objectives, the corporation by not later than April 17, 1950, acquired 157.18 acres, more or less, of land located in Dade County, Florida. On June 21, 1950, the corporation filed in the public records of Dade County, Florida, a subdivision plat known as Town and Ranch Estates, containing 13 blocks subdivided into 129 tracts or lots, which varied in approximate size from 1 to 2 3/4 acres. The corporation installed improvements to the subdivision property at the time the plat was filed in June 1950 which included *238 paved streets, electricity and power, and telephone lines. It erected a sign at the entrance of the subdivision property entitled "Town and Ranch Estates" and, in addition, owned a construction shed located thereon which also was used as a sales office for certain salesmen. Town and Ranch Estates was a completed subdivision so far as improvements were concerned. During the period from January 27, 1950 to February 29, 1952, the corporation in the course of its business caused 12 houses to be built on 12 lots and thereafter sold the 12 lots with homes thereon, which sales were reported as ordinary income on its United States corporation income tax returns for the fiscal years ended February 28, 1951 and February 29, 1952. Eleven of these 12 houses were built on lots located in Blocks 1 and 2 of the plat, which lots were on the perimeter of the subdivision and which houses easily were visible from the bordering streets. These houses were in the $25,000 to $35,000 price range. Petitioner acted as broker in connection with some of the 22 lot and house and lot sales made by the corporation. Because petitioner had no personal experience with respect to the construction of houses and *239 due to the death of Moss who had such experience and also because petitioner and Moss's son could not see "eye to eye" as to the continued conduct of the affairs of the corporation, it was decided to dissolve the corporation and divide its assets. At or about the time of liquidation of the corporation, petitioner wanted to leave Miami and go over to Ft. Myers, Florida, and open a real estate broker's office with the funds obtained from the sale of his 53 lots. As of June 2, 1952, the date of liquidation, the corporation had on hand 107 lots of unsold Town and Ranch Estates subdivision property. Upon liquidation or about June 2, 1952, of the unsold 107 tracts held for sale by the corporation, a total of 53 lots was acquired by petitioner. Petitioner sold the 53 lots acquired by him in liquidation of the corporation to third-party purchasers on the dates indicated and reported profits therefrom as follows: Profit Reported
Date Sold
Purchaser
1953
1954
1955
9-10-52
E. A. MacKay
$ 1,144.06
10-24-52
E. B. Wall
1,232.01
8-12-52
W. G. Muchett
1,258.33
9-15-52
The Dougan Co.
1,341.57
11-13-52
G. W. Block
420.84
$1,263.64
11-18-52
F. B. Beasley
144.48
132.24
$ 112.80
11-18-52
E. N. Maylan
594.39
1,188.67
12-11-52
P. T. Gautiere
522.16
814.04
12--11-52
S. W. Wilson
244.94
1,399.62
10-28-52
Vernon Reichert [1]
9- 9-52
Reliance Const. Co. [1]
10-28-52
Clark H. Sims [1]
10-28-52
Clark H. Sims [1]
10-28-52
Gerald P. Gioia [1]
10-17-52
Rod E. Overholt [1]
9-25-52
James B. Vosters [1]
1-10-53
Melvin G. Flanagan
1,867.12
1-15-53
Paul Martin
1-15-53
Paul Martin
1-15-53
Paul Martin
1-15-53
Paul Martin
17,096.47
1-15-53
Paul Martin
1-15-53
Paul Martin
1-15-53
Paul Martin
1-15-53
Vernon Reichert
1-15-53
Vernon Reichert
1-15-53
Vernon Reichert
1-15-53
Vernon Reichert
$17,197.49
1-15-53
Vernon Reichert
1-15-53
Vernon Reichert
1-15-53
Vernon Reichert
1-15-53
Frederick Smith
2,390.26
1-15-53
Paul Martin
2,405.68
1-30-53
Byron L. Holden
3,205.68
2- 6-53
John A. Reisinger, Jr.
1,813.14
2-25-53
H. W. Lamphins, Jr.
2-25-53
H. W. Lamphins, Jr.
7,286.45
2-25-53
H. W. Lamphins, Jr.
2-25-53
William Dougherty
2,828.82
3-16-53
Paul Martin
818.91
$2,386.77
3-18-53
Alexander Carlin
3,197.97
3-10-53
Price & Price
2,840.00
4-20-53
Vernon J. Allison
3,728.82
5-28-53
Jack Williams
3,613.14
5-28-53
E. H. Dougan, Jr.
3,036.02
6- 1-53
Price & Price
4,757.38
6- 1-53
Price & Price
6- 1-53
Jack Williams
1,584.73
1,164.37
$1,223.95
6-23-53
Vernon Reichert
2,228.82
8- 2-53
John O. Christenson
1,982.04
1-12-53
Rudolph Schneider [2]
2- 6-53
Billy E. Miller [2]
1-11-55
Edythe M. Lipkin (acre tract)
5,413.85
Total profit reported
$90,781.72
$7,160.68
$7,939.27
Portion of profit included in gross income
$45,390.86
$3,580.34
$3,969.64
*240 Martin, Reichert, and Lamphins (noted as purchasers on the foregoing schedule) were builders and dealers in real property. A considerable proportion of the 53 parcels of property were sold by petitioner at a price below the existing market for such property. Petitioner made 16 sales in 1952, 36 sales in 1953, and 1 sale in 1955 of lots in the Town and Ranch Estates subdivision. Negotiations with respect to the sale by petitioner of the 16 lots sold in the latter half of 1952 commenced soon after receipt of the lots from the corporation on June 2, 1952. Throughout the 3-year period at issue petitioner's sales of the 53 parcels of property were carried out by his own efforts and the efforts of his staff of salesmen regularly employed by him in his brokerage business. Some of his lots were also disposed of through the efforts of other brokers, the subdivision being well and favorably known in the Miami area. In disposing of his property petitioner did not advertise in news or advertising media but instead made use of already existing advertising facilities established *241 by the corporation. The net or taxable income reported on petitioners' joint Federal income tax returns for the taxable years ended December 31, 1953, 1954, and 1955 may be summarized as follows: 1953
1954
1955
Business income (loss) as real estate broker
($ 2,039.55)
($10,370.52)
$ 5,749.41
Long-term capital gain from sale of 53 Town and
Ranch Estate lots
45,390.86
3,580.34
3,969.64
Long-term capital gain on South Miami Heights
Corp. stock (50%)
37,139.30
683.33
Other long-term capital gains (losses) (50%)
( 7,509.26)
Farm and non-capital (losses)
( 8,381.08)
( 13,841.05)
Adjusted gross income (loss)
$43,351.31
$14,458.78
($ 3,438.67)
Less: Deductions and exemptions
4,000.00
4,000.00
none
Net or taxable income
$39,351.31
$10,458.78
none
Profits in the amounts of $90,781.72, $7,160.68, and $7,939.27 for the years 1953, 1954, and 1955 were realized by petitioners from the sale of their 53 Town and Ranch Estates improved subdivision lots, which profits were a major source of petitioners' income, particularly for the year 1953. Ultimate Findings During the years at issue petitioner held the 53 parcels of real property *242 acquired by him on liquidation of the corporation for sale generally. In selling the parcels petitioner was not engaged in a trade or business. Opinion The issue here presented is one of fact. It narrows to the question: In liquidating his stock investment in Town and Ranch Estates, Inc., did petitioner engage in the business of selling real estate for his own account? If so, he is liable upon the deficiencies here asserted for it is beyond dispute that he held the real property distributed to him upon liquidation of the corporation for sale and for no other purpose. If not, his sales were capital in nature and must be so treated. It is clear the petitioner's business prior to and subsequent to the corporate liquidation was that of a real estate broker effectuating the purchase and sale of the property of others and not for his own account, but this is not dispositive of the question whether at the same time, in liquidating his investment in the corporation, his transactions to that end constituted the carrying on of a business. Criteria for decision on this issue have been the regularity and continuity of transactions; whether the taxpayer has held himself out to others as *243 being engaged in the sale of property; are the transactions involved carried out with a profit motive; the comparative working time of the taxpayer devoted to such transactions and his other business activities; the gross amount of business done; and the purpose of the taxpayer in acquiring the involved property. Petitioner's acquisition of real property from the corporation was motivated we think by his intention to liquidate his stock interest therein. The business in which the corporation had been engaged prior to the distribution of its assets was clearly not that of petitioner who was one of its stockholders, Moline Property v. Commissioner, 319 U.S. 436, and this would be true even though it was the same type of business as that in which petitioner was engaged. Petitioner's business was and had been for years that of a broker, not that of a dealer in real estate for his own account, while that of the corporation had been the purchase of raw land, the subdividing and improving thereof, the construction of homes upon lots, and the ultimate sales of houses and lots for a profit. Petitioner had no experience in or desire to become involved personally with the construction *244 of houses and, upon the death of Erving A. Moss, the other chief stockholder of the corporation who was experienced in that line, was faced with a situation which he did not feel represented a safe continued investment. Coupled with this situation was the fact that dissention arose between petitioner and the inheritors of Moss's stock. We conclude therefore that petitioner's acquisition of the property here involved was fortuitous and was not brought about by an intent to engage in a trade or business in the sale thereof. The above conclusion however is not dispositive of the issue before us. The question still remains whether, regardless of petitioner's motive in acquiring the property, did he nevertheless engage in a trade or business in disposing of it. It is true that he did not engage in advertising his property for sale to customers in the news and advertising media, but instead made use of the already existing advertising facilities which had been established by the corporation upon the property and the fact that the existence of the subdivision in which his property was incorporated was well and favorably known to others who dealt in real estate in one way or another. This *245 fact is of little aid in resolving the issue before us, but it does indicate a passive attitude on the part of petitioner which does not mesh with the ordinarily expected aggressive advertising policy of a trade or business enterprise. While carrying on his real estate brokerage business in his office and with the services of a force of salesmen regularly employed by him on a commission basis, petitioner, by the use of the same facilities and staff and his own sales efforts, sold the properties in controversy over a period of 3 years, paying commission for such services at the going rate to salesmen who effectuated sales. The record does not indicate however that he increased his office facilities or the number of his salesmen for the purpose of disposing of such property. This also seems to us to be a passive approach which is incosistent with the conduct of a real estate dealership. Petitioner over a sufficiently long period sold a sufficient number of parcels of his property that, considered alone, such sales would justify a finding of a business intent, but it appears that the number of parcels sold to each purchaser and the price paid lessen such justification to some extent. *246 Upon several occasions more than one parcel was sold to purchasers who were engaged in one or the other phase of the real estate business, with the remainder sold to individuals who were not so engaged. A substantial proportion of the parcels were sold at a price below the going market for such property. We think that had petitioner actually conducted a business in his sale of these properties, particularly in view of the fact that he had an already established sales office and organization, sales would more likely have been limited to individuals, in single parcels, and held however long was necessary to obtain at least the going market price. This we think negatives the contention that such sales were conducted primarily with a profit motive and coincides with petitioner's contention that his primary purpose was to reacquire the cash he had theretofore invested in the stock of the corporation. Although the record affords no satisfactory basis for a comparison of the relative time and effort expended by petitioner in his brokerage business and the sale of the real estate in question, we think it is clear enough that he was not aggressive, but rather passive in the effectuation of *247 the latter. This is borne out we think by the wide variation in petitioner's receipts from such sales during the 3 years required for disposition of his property. Had his efforts been those of one aggressively conducting a business, it would seem that the annual amounts of such receipts would have been more nearly equal. He was waiting for purchasers rather than going to get them. While the comparative gain or loss between petitioner's brokerage business and other business transactions and his sales transactions involving disposal of the 53 parcels obtained from the corporation disclose that his gains were derived entirely from the latter in 1953, largely from the latter in 1954, and substantially therefrom in 1955, we do not find this fact to be conclusive when it appears that the other evidence of record tends to negate the proposition that petitioner was carrying on a trade or business in his disposal of the 53 parcels. From a consideration of the entire record we conclude that in his disposition of the properties distributed to him by Town and Ranch Estates, Inc., petitioner was not conducting a trade or business and that such sales are to be treated as capital transactions. *248 Decision will be entered under Rule 50. Footnotes
1. Profit reported by petitioners in 1952 income tax return. ↩
2. Profit reported by petitioners in other years.↩